MELANIE A. HILL
Nevada Bar No. 8796
**MELANIE HILL LAW PLLC**
1925 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Tel:  (702) 362-8500
Fax: (702) 362-8505
Melanie@MelanieHillLaw.com
*Attorneys for Plaintiffs Ernesto Manuel Gonzalez,*
*James Patrick Gillespie, Cesar Vaquera Morales,*
*Diego Chavez Garcia, and Bradley Campos*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ERNESTO MANUEL GONZALEZ, an individual, JAMES PATRICK GILLESPIE, an individual, CESAR VAQUERA MORALES, an individual, DIEGO CHAVEZ GARCIA, an individual, BRADLEY CAMPOS, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, DAVID N. KARPEL, individually, DOES 1 through 100; and ROES 1 through 100; inclusive,<br><br>Defendants. | CASE NO.:<br><br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiffs ERNESTO MANUEL GONZALEZ ("GONZALEZ"), JAMES PATRICK GILLESPIE ("GILLESPIE"), CESAR VAQUERA MORALES ("MORALES"), DIEGO CHAVEZ GARCIA ("GARCIA"), and BRADLEY CAMPOS ("CAMPOS") (collectively referred to herein as "Plaintiffs"), by and through their counsel, Melanie A. Hill of Melanie Hill Law PLLC, for their claims of relief against Defendants UNITED STATES OF AMERICA, DAVID N. KARPEL, individually, DOES 1 through 100, and ROES 1 through 100 (hereinafter referred to collectively as

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

1 of 43

"Defendants" or "the Government"), and each of them, jointly and severally, based upon knowledge, information, and reasonable belief derived therefrom, allege, complain, and state as follows in this Complaint for Damages:

JURISDICTION AND VENUE

1. This action seeks damages for violations of Plaintiffs' civil rights raising constitutional claims under the Fifth and Eighth Amendments to the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and under the Federal Tort Claims Act ("FTCA"). This Court has subject matter jurisdiction over Defendant UNITED STATES OF AMERICA (hereinafter, "UNITED STATES") on behalf of its federal employees under 28 U.S.C. § 134(b), 2671 et seq., which vests exclusive subject matter jurisdiction of FTCA litigation in the United States District Court. The liability of Defendant UNITED STATES and this Court's jurisdiction over it is predicated specifically on 28 U.S.C. §§ 1346(b)(1) and 2674 because injuries, harms, and damages that form the basis of this complaint were proximately caused by the negligence, wrongful acts and/or omissions of employees of Defendant UNITED STATES through its agencies the United States Department of Justice (hereinafter, "DOJ"), the United States Attorneys' Office for the District of Nevada (hereinafter ,"USAONV"), the Bureau of Alcohol, Tobacco, Firearms and Explosives Las Vegas Field Office (hereinafter, "ATF"), the Department of Homeland Security - Riverside, California (hereinafter, "DHS"), and/or ROES 1 through 100 (hereinafter referred to collectively as "Defendants" or "the Government"). This Court has subject matter jurisdiction over the instant FTCA claims and federal Defendant UNITED STATES named herein under 28 U.S.C. §§ 1346 and 2647. Pursuant to 28 U.S.C. § 1346(b), each of the Plaintiffs named herein timely and properly submitted a Claim for Damage, Injury or Death to Defendant UNITED STATES and its requisite agencies and, as such, have fully satisfied and exhausted their administrative obligations to present their FTCA claims to the Court.

2. The FTCA, 28 U.S.C. §§ 1346(b), 2671-2680, requires that Plaintiffs first exhaust their administrative remedies by making a written demand to the offending federal agencies before initiating actions against Defendant UNITED STATES and those federal agencies in federal court. The statute gives the agencies six (6) months to respond to the written demands.

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

3.      Plaintiffs, through counsel, each mailed by Federal Express an Administrative Claim on Standard Form 95 to the DOJ in Washington, District of Columbia and in Las Vegas, Nevada, the USAONV in in Washington, District of Columbia and Las Vegas, Nevada, the ATF in Washington, District of Columbia, DHS in Washington, District of Columbia and the FBI in Washington, District of Columbia on August 18, 2021.

4.      To date, no substantive response has been received to the written demands other than a letter dated September 29, 2021 confirming the receipt of all of the Plaintiffs' Administrative Tort Claims on August 19, 2021.

5.      Given that the Administrative Tort Claim forms were each received on August 19, 2021, the six-month period to respond to the Administrative Claim has therefore run on the FTCA claims and the claims are ripe for filing the instant federal lawsuit.

6.      This Court has supplemental jurisdiction over Plaintiffs' causes of action arising under Nevada state law pursuant to 28 U.S.C. § 1367.

7.      Venue lies in the unofficial Southern Division of the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(a)(1) and 28 U.S.C. §§ 1391(b)(1), (b)(2), and (e)(1) because the underlying acts, omissions, events, injuries and related facts upon which the present action is based occurred in Clark County, Nevada and because the UNITED STATES is a defendant and one or more defendants herein is an officer or employee of the United States.

8.      Defendant KARPEL and DOES 1 through 100 named herein are/were law enforcement agents and employees of Defendant UNITED STATES.  They were acting within the course and scope of their employment at all times relevant to this Complaint for Damages.  The constitutional violations and tortious conduct at issue in this case involve federal agencies and employees and are therefore ultimately chargeable to Defendant UNITED STATES itself.

9.      Defendants KARPEL and DOES 1 through 100 are/were agents, servants, and employees of each of the other named defendants and were acting at all times within the full course and scope of their agency and employment, with the full knowledge and consent, either express or implied, of their principal and/or employer and each of the other named Defendants.  Each of the Defendants, DOES 1 through 100, and ROES 1 through 100 had approved or ratified the actions of the

other Defendants, thereby making the currently named Defendants liable for the acts and/or omissions of their agents, servants and/or employees.

PARTIES

10.      Plaintiff ERNESTO MANUEL GONZALEZ (hereinafter, "GONZALEZ") is, and at all times herein mentioned was, a United States citizen and a resident of Santa Clara County, California.

11.      Plaintiff JAMES PATRICK GILLESPIE (hereinafter, "GILLESPIE") is, and at all times herein mentioned was, a United States citizen and a resident of Santa Clara County, California.

12.      Plaintiff CESAR VAQUERA MORALES (hereinafter, "MORALES") is, and at all times herein mentioned was, a United States citizen and a resident of Santa Clara County, California.

13.      Plaintiff DIEGO CHAVEZ GARCIA (hereinafter, "GARCIA") is, and at all times herein mentioned was, a United States citizen and a resident of Santa Clara County, California.

14.      Plaintiff BRADLEY CAMPOS (hereinafter, "CAMPOS") is, and at all times herein mentioned was, a United States citizen and a resident of Los Angeles County, California.

15.      Upon information and belief, Defendant DAVID N. KARPEL (hereinafter, "KARPEL") is and was at all times relevant to this action a resident of Washington, District of Columbia and a Trial Attorney with the Organized Crime and Gang Section of the United States Department of Justice ("DOJ").   During the relevant time period in this lawsuit, KARPEL was directly responsible for bringing and signing the RICO Indictment against Plaintiffs and their eighteen (18) co-defendants. Upon information and belief, KARPEL is one of the attorneys that presented the evidence and witnesses in the underlying criminal RICO/VICAR case to the Grand Jury that brought this True Bill against Plaintiffs.   Upon information and belief, KARPEL was continually and substantially involved in directing the investigation and developing the witness testimony that ultimately led to Plaintiffs being charged in the superseding RICO/VICAR indictment with one overt act being the alleged murder in Sparks, Nevada in *United States v. Palafox, et. al.*, 2:16-cr-265-GMN-CWH [ECF No. 13]. Specifically, it is alleged that KARPEL met with government witnesses Gary Rudnick, Jefferson Martin, and Scott Rivera multiple times prior to these witnesses testifying before the grand jury on June 7, 2017 to provide testimony that was ultimately used to indict Plaintiffs in the superseding RICO/VICAR indictment in the District of Nevada. Upon information and belief, a RICO/VICAR

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

1  indictment could not be brought by the USAONV without approval from the DOJ according to DOJ

2  policy. Additionally, an Indictment seeking the death penalty also requires approval from the DOJ

3  according to DOJ policy. The Superseding RICO/VICAR Indictment sought the death penalty against

4  all of the Plaintiffs in this Complaint and was signed by Defendant KARPEL as Trial Attorney for the

5  Department of Justice Organized Crime and Gang Section. Defendant KARPEL is being sued in his

6  individual capacity.

7       16.    Defendant UNITED STATES OF AMERICA (hereinafter "UNITED STATES") is the

8  national federal government established by the United States Constitution. Accordingly, it is subject

9  to limitations imposed by the Constitution – including as relevant here, the Fifth and Eighth

10  Amendments. The United States is the appropriate defendant for Plaintiffs' claims herein under the

11  Federal Tort Claims Act ("FTCA") and was at all times relevant to this action, the employer of

12  KARPEL and DOES 1 through 100. The UNITED STATES, through its various agencies (e.g., the

13  DOJ, USAONV, ATF, and DHS described more specifically below) and employees (i.e., Defendants

14  KARPEL and DOES 1 through 100) – each of whom, for purposes of Plaintiffs' FTCA claims, was

15  acting within his/her official capacity and within the course and scope of her/his employment with the

16  applicable federal agency – caused acts and events to occur within this forum from which Plaintiffs'

17  claims arose.

18       A.    The DOJ is, and at all material times was, an Executive Department and agency

19             of Defendant UNITED STATES; responsible for the enforcement of law and

20             the administration of justice within the United States and doing business in this

21             District; the administrator of several law enforcement agencies and offices,

22             including, without limitation, the USAONV, ATF, DHS, and ROES 1 through

23             100; and an employer of Defendants KARPEL and DOES 1 through 100.

24       B.    The ATF is, and at all material times was, the investigative arm of Defendant

25             UNITED STATES, the DOJ, and the USAONV; doing business in this

26             District; and an employer of DOES 1 through 100.

27       C.    The DHS is, and at all material times was, the investigative arm of Defendant

28             UNITED STATES, the DOJ, and the USAONV; doing business in this

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

5 of 43

1   District; and an employer of DOES 1 through 100.

2   17.    Defendants UNITED STATES, KARPEL, DOES 1 through 100, and ROES 1 through

3   100 shall hereinafter collectively be referred to as the Government.

4   18.    Upon information and belief, Defendants identified as DOES 1 through 100 and ROES

5   1 through 100, whether individual, corporate, associate, governmental or otherwise, caused acts and

6   events to occur within this forum from which Plaintiffs claims arose. The true names and capacities of

7   these parties is not currently known by Plaintiffs, and once such identities become known, Plaintiffs

8   will seek leave of Court to amend their Complaint accordingly to add these Defendants.

9                                    STATEMENT OF FACTS

10   19.    As was demonstrated and displayed throughout the trial of the Plaintiffs named herein

11   for the first trial group in the RICO/VICAR Conspiracy Case, and as was displayed throughout the trial,

12   the Government knowingly elicited testimony from witnesses who not only have issues with being

13   honest, but are admitted liars who were willing to repeatedly lie under oath.  As will be illustrated

14   herein, the United States' Superseding Indictment against Plaintiffs (and their co-defendants in the

15   RICO/VICAR Conspiracy Case) is not valid as it is based on lies and fabrications of evidence to the

16   Grand Jury elicited by Defendants KARPEL and DOES 1 through 100.  It is irreparably tainted.  The

17   Government cannot "fix" the Superseding Indictment in the RICO/VICAR Conspiracy Case.

18   20.    On July 11, 2010, the Department of Homeland Security - Riverside, California

19   (hereinafter, "DHS"), launched an investigation into the Vagos Motorcycle Club (hereinafter, "Vagos

20   MC").  The investigation was comprised of the California Department of Justice, Bureau of Narcotics

21   Enforcement, Inland Crackdown Allied Task Force, and the Drug Enforcement Administration upon

22   the belief that the Vagos MC was a criminal enterprise. The investigation included Title III wiretap

23   evidence, confidential informants, countless hours of investigation, and surveillance. The operation was

24   labeled "Operation Simple Green." Upon information and belief, Operation Simple Green lasted until

25   2017 and was investigated by the joint task force of which all members were deputized federal

26   officers/agents.

27   21.    On September 23, 2011, a shooting occurred at the Nugget Casino in Sparks, Nevada.

28   The shooting was after an altercation occurred between alleged Vagos MC members and the Hells

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

Angels Motorcycle Club. A member of the Hells Angels Motorcycle Club, Jethro Pettigrew, was killed.

22.     On September 30, 2011, Plaintiff GONZALEZ, was arrested and charged in the Washoe County District Court with Murder with Use of a Deadly Weapon, Conspiracy to Commit Murder, Discharging a Firearm in a Structure and Carrying a Concealed Weapon. The Washoe County Sheriff's Department alleged that Gonzalez, a Vagos MC member, was responsible for the shooting death of Pettigrew at the Nugget Casino on September 23, 2011.

23.     On November 15, 2011, Gary Rudnick was arrested and charged with First Degree Murder with Use of a Deadly Weapon for his involvement in the September 23, 2011, incident at the Nugget Casino. He was alleged to have started and/or created the altercation with the Hells Angel Motorcycle Club that led to the shooting.

24.     On January 5, 2012, Rudnick interviewed with task force officers from the Operation Simple Green investigation and provided a statement wherein he alleged the killing of Pettigrew was ordered by the Vagos MC international leadership after conferring with the leadership of the San Jose and Los Angeles charters. Additionally, he provided false information about the Vagos MC in which he claimed they were a criminal enterprise.

25.     On February 11, 2012, Rudnick interviewed with Sparks Police Department and Washoe County Sheriff's Office and provided another statement alleging the similar claims.

26.     On March 16, 2012, Scott Rivera, an alleged member of the Vagos MC, was interviewed DHS special agent, Matthew Neal, along with other task force officers. Rivera was arrested on October 6, 2011 for Possession of a Stolen Motorcycle and was alleged to be a close associate to the Vagos MC International President. When Rivera was asked about the Nugget shooting, he said that he was not aware of any prior plans to kill Pettigrew.

27.     On July 22, 2013, after two years in custody at the Washoe County Detention Center, Plaintiff Gonzalez' case was tried. At the trial, on July 31, 2013, Rudnick testified and again alleged the killing was part of a Vagos MC conspiracy and Gonzalez was ordered by Vagos MC officers to kill Pettigrew.

28.     While Rudnick testified, he provided a different account of the events that transpired on September 23, 2011 than what he had previously provided to the Government in his numerous

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

interviews. Specifically, he provided different accounts of who was alleged to be at the meeting in which the "hit" was ordered prior to when the shooting occurred and where the official meeting occurred.  While testifying, Rudnick committed perjury.

29.     On August 7, 2013, Plaintiff GONZALEZ was convicted and a Judgment of Conviction was entered for him to serve a term of life imprisonment in the custody of the Nevada Department of Corrections (hereinafter, "NDOC").

30.     On February 2, 2013, Rudnick was sentenced to 24-84 months in custody of the NDOC after accepting a plea for Conspiracy to Commit Murder.

31.     Upon information and belief, in or around 2015, Department of Justice (hereinafter, "DOJ") Attorney and Defendant, DAVID KARPEL (hereinafter, "KARPEL"), began working on this investigation of the Vagos MC.

32.     On June 10, 2015, Rudnick met with KARPEL and case agents for the first time, after his incarceration with the NDOC, for his involvement in the Nugget shooting.

33.     On April 1, 2015, a former Vagos MC member, Jefferson Martin, was interviewed by Operation Simple Green task force officers for the first time. During the interview, he stated there was no conspiracy to kill Pettigrew and he did not know of a conspiracy and did not take part in a conspiracy. Additionally, he specifically said that Rudnick alleged that about him because Rudnick did not like him.

34.     On April 29, 2015, Martin again met with task force officers and KARPEL. Again, Martin denied knowing or ever hearing from other members that the murder of Pettigrew was a planned attack.

35.     On December 31, 2015, the case against GONZALEZ was reversed on appeal by the Nevada Supreme Court and the case was remanded back to the Second Judicial District Court for a retrial. In the Opinion, the Nevada Supreme Court stated "Rudnick's testimony about the alleged conspiracy, which formed the basis for several of Gonzalez's convictions, was uncorroborated by any other witnesses or evidence." *See* Opinion, attached hereto as **Exhibit A**.

36.     On February 10, 2016, Defendant KARPEL, with case agents, met with Rudnick and Rudnick provided names of some of the Vagos MC members that were alleged to in attendance at the

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

meeting when the purported order was given to kill Pettigrew. He was shown a photo lineup and asked to identify who was at the meeting. Upon information and belief, Rudnick provided names of certain individuals and then was asked if he remembered Martin being present at the alleged meeting. Based on information obtained, it is believed that Rudnick affirmed Martin's presence at the meeting, after being prompted by Defendant KARPEL and case agents. Rudnick stated the side meeting occurred just outside the conference room where there was a larger all-member meeting.

37.     On March 17, 2016, Rudnick sat down with GONZALEZ's investigator, April Higuera, and recanted his previous statements and stated that there was not a conspiracy to murder Pettigrew, and it was a bar fight that went bad. On this date, Rudnick signed an Affidavit and unbeknownst to him was being recorded by Higuera.

38.     On May 10, 2016, Martin interviewed with Defendant KARPEL and task force officers. At this time, Martin now alleged that a conspiracy did exist and named numerous individuals that were present. The individuals that were present were not consistent with the different names provided on other dates by Rudnick.

39.     Also on May 10, 2016, Rivera was interviewed by Defendant KARPEL and task force officers. Rivera denied any knowledge about a conspiracy to kill Pettigrew. Rivera stated that he did not hear an order being given.

40.     On May 26, 2016, Defendant KARPEL and case agents interviewed Rudnick again while he was at a halfway house after his release from NDOC and was offered assistance for housing through DHS.

41.     Then on June 3, 2016, case agents had contact from Jill Dunaway, a friend of Rudnick, on behalf of Rudnick who stated that Rudnick had contact with counsel for GONZALEZ and his investigator.

42.     Upon information and belief, in 2016 and/or early 2017, Washoe County District Attorneys' Office investigator and joint task force officer Peter Grimm and DHS Special Agent and joint task force supervising agent Matthew Neal attempted to interview Plaintiffs MORALES, GARCIA, and CAMPOS. All of the Plaintiffs named herein were threatened by Neal and Grimm and were specifically told that "they could either be a witness or a Defendant in a federal RICO indictment."

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

43.     On March 5, 2017, Defendant KARPEL and joint task force officers, Grimm and Neal again met with Martin. He again alleged a conspiracy existed, however, changed the names of the individuals present at the alleged meeting.

44.     On March 14, 2017, Rivera was again interviewed by joint task force agents and Defendant KARPEL regarding the Nugget shooting. During this interview, he stated that he thought there was a "green light" issued at the large all member meeting against all Hells Angels MC members. Rivera then alleged to have recalled a large side meeting in which he identified members of the Vagos MC that were similar to those previously claimed by Rudnick and Martin. This is the first time, after meeting with Defendant KARPEL on two (2) different occasions, that Rivera claimed there was a side meeting.

45.     On March 18, 2017, Defendants, specifically Defendant KARPEL, were notified of the recantation of Rudnick and task force officer, Grimm, talked with Rudnick and was then told a different story by Rudnick. He was told Rudnick lied to defense counsel and there was a conspiracy to murder Pettigrew.

46.     On June 7, 2017, Defendant KARPEL presented Rudnick, Rivera, and Martin as witnesses before the grand jury in Santa Ana, California. KARPEL prompted each witness to answer "yes" to certain members being present in the alleged meeting to conspire to kill Pettigrew.

47.     On June 14, 2017, the USAONV returned a grand jury indictment against 23 members of the Vagos MC, including the five (5) Plaintiffs named herein, based on the testimony of Rudnick, Rivera, and Martin presented to the grand jury by Defendant KARPEL.

48.     The testimony provided by Rudnick, Rivera and Martin is inconsistent with the sworn testimony the USAONV used to obtain the Superseding Indictment in the RICO/VICAR conspiracy case when they testified before the Grand Jury on June 7, 2017.

49.     On June 14, 2017, Plaintiffs GONZALEZ and GILLESPIE were indicted and maliciously prosecuted by way of Superseding Indictment for Count One- Conspiracy to Participate in a Racketeering Enterprise (18 U.S.C. § 1962(d)), Count Two- Violent Crime in Aid of Racketeering-Murder (18 U.S.C. § 1959(a)(1)) and Count Three- Using and Carrying a Firearm to Commit Murder During and in Relation to a Crime of Violence (18 U.S.C. § 924(j)(1)). The accusation is part of a forty-

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

four (44) page Superseding Indictment charging twenty (20) other Co-Defendants with RICO/VICAR violations and Plaintiffs MORALES, GARCIA, and CAMPOS with Counts Two and Three only. The incidents and alleged overt acts related to the racketeering conspiracy are purported to have begun in 2005 and continued throughout the date of the Sealed Superseding Criminal Indictment, June 14, 2017 (hereinafter "RICO Conspiracy case"). In the Indictment, the Government originally sought a death sentence against all eight (8) of the defendants in Trial Group 1 who were charged with the VICAR Murder in Count 2.

50.    On June 14, 2017, Plaintiffs MORALES, CAMPOS, and GARCIA were indicted and maliciously prosecuted by way of Superseding Indictment which charged them with Count Two-Violent Crime in Aid of Racketeering-Murder (18 U.S.C. § 1959(a)(1)) and Count Three- Using and Carrying a Firearm to Commit Murder During and in Relation to a Crime of Violence (18 U.S.C. § 924(j)(1)).   Plaintiffs MORALES, CAMPOS, and GARCIA were not charged with the RICO Conspiracy case. In the Superseding Indictment, the Government sought a death sentence against Plaintiffs MORALES, CAMPOS, and GARCIA as well as the remaining Plaintiffs and their co-Defendants in Count 2 for the VICAR Murder.

51.    On June 15, 2017, Plaintiff GILLESPIE was served with an Arrest Warrant in Los Angeles, California. He was ordered detained pending trial and held in federal custody for two years and eight months by the United States Marshals at the Nevada Southern Detention Center (hereinafter, "NSDC") in Pahrump, Nevada until the trial concluded.

52.    On June 16, 2017, Plaintiff MORALES was arrested in San Jose, California and had a detention hearing. For fifty (50) days, he was held custody by the United States Marshal at Santa Rita Federal Holding Facility in Dublin, California.  On August 4, 2017, MORALES was able to place a bond of $750,000.00 in the Northern District of California and was required to be supervised by pretrial services pending trial and deprived of his second amendment right to bear arms while he awaited trial. Plaintiff MORALES was also deprived of his life and liberty and his ability to work, travel, and live freely was impacted because he had a 9:00 pm curfew and was required to wear a GPS monitor for a little over two years and six months. This significantly impacted his ability to work as a licensed contractor in the state of California and run his contracting business. The Indictment also caused him

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

reputational harm and prevented him from getting referral business.

53.     On June 16, 2017, Plaintiff CAMPOS was arrested in Alhambra, California. He was held custody by the United States Marshals for thirteen (13) days. On June 29, 2017, he was released on personal recognizance bond and was required to be supervised by pretrial services pending trial and deprived of his second amendment right to bear arms while he awaited trial.

54.     On June 16, 2017, Plaintiff GARCIA was arrested in San Jose, California. For fifty (50) days, GARCIA was held custody by the United States Marshal at Glen Dyer Detention Center in Oakland, California.  On August 5, 2017, he was able to place a bond of $500,000.00 in the Northern District of California and was required to be supervised by pretrial services pending trial and deprived of his second amendment right to bear arms while he awaited trial.

55.     On or around June 17, 2017, while Plaintiff GONZALEZ was at Washoe County Detention Center, task force officers attempted to interview GONZALEZ about the RICO/VICAR Conspiracy case. The request was declined by GONZALEZ's counsel.  GONZALEZ was served with an Arrest Warrant out of the District of Nevada and was transferred from Washoe County Detention Center to Nevada Southern Detention Center. On August 11, 2017, GONZALEZ had a detention hearing after being transferred to the District of Nevada and was ordered detained pending trial for two years and eight months on the Superseding RICO/VICAR Indictment.

56.     There were special sentencing characteristics in the Superseding RICO/VICAR Indictment informing Plaintiffs that the USAONV was possibly seeking the death penalty against them and they were appointed learned counsel.  On March 12, 2018, the USAONV filed a Notice of Non-Seek wherein they elected to not seek the death penalty against all Plaintiffs.

57.     On January 16, 2019, the USAONV filed a Notice of Attorney which identified United States DOJ Trial Attorney, John Han, Esq., as an attorney for the Government.

58.     On July 29, 2019, the case proceeded to trial. The trial lasted nearly seven months and ended on February 24, 2020 when all Defendants were acquitted of all charges in the Superseding RICO/VICAR Indictment.

59.     On September 24, 2019, while in trial, the USAONV through Dan Schiess, Esq. provided a letter to the Defendants, during trial, which outlined all the different lies that Martin had

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

previously provided during his many interviews with law enforcement. During the September 22, 2019 interview, Martin told the Government that he felt pressure from Defendant KARPEL to characterize events surrounding the September 23, 2011 at the Nugget and therefore lied to law enforcement and at the Grand Jury.

60.   Throughout the trial, the Government called each of their cooperating witnesses Rudnick, Martin and Rivera, as Government witnesses. All witnesses testified at trial, committed perjury, contradicted themselves, and admitted to making false statements numerous times. More importantly, they testified at trial repeatedly to items that the Defendants and DOES 1 through 100 knew were false.

61.   Throughout the trial, the Government knowingly elicited testimony from Rudnick, Rivera, and Martin who not only had issues with truthfulness but were admitted liars willing to repeatedly lie under oath.  Judge Navarro even appointed all three cooperating witnesses counsel to assist them in testifying at trial and to advise them on their Fifth Amendment right to remain silent.

62.   Specifically, Martin testified during the jury trial. He committed perjury, contradicted himself, and admitted to making false statements a multitude of times.  These lies included numerous lies to the Grand Jury which were used to obtain the Superseding Indictment in the RICO/VICAR Conspiracy case against the Plaintiffs. Like Rudnick, Martin was also appointed a lawyer, Richard Wright, by the Court. Martin testified that he was under the impression, up until he was appointed a lawyer on September 21, 2019, that he was safe from being prosecuted.  The United States has conceded Rudnick's false allegations and Martin's false allegations were presented to the Grand Jury These allegations were material, as they serve as underpinnings to obtaining the Superseding Indictment in the RICO/VICAR Conspiracy case.

63.   At the trial, Rudnick testified about Defendant KARPEL's involvement in directing the investigation of the RICO murder and developing the testimony that would ultimately be presented to the Grand Jury to ensure the Superseding Indictment would be secured.  Rudnick was also appointed a lawyer, Lisa Rasmussen, Esq. by the Court to advise him on his Fifth Amendment right to remain silent. Rudnick, with his appointed lawyer at his side on the witness stand, testified as follows:

    Q.      And there you are in front of a Grand Jury in Santa Anna,

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

California, with David Karpel.

A.      Yes, I was.

Q.      David Karpel was the prosecutor who was part of this team, right?

A.      Yes, he was.

Q.      And you met with David Karpel on many occasions, didn't you?

A.      Couple times, yes.

Q.      You met with David Karpel after you told April Higurea that you were going to do the right thing.

A.      One second.

(Witness conferring with counsel.)

THE WITNESS: Okay. Can you go ahead and ask the question.

BY MS. BLISS:

Q.      My question, I will repeat for you, sir, was: You met with David Karpel after you told April Higurea that you were going to do the right thing.

A.      I'm going to take the Fifth on that.

Q.      Okay. And after you met with David Karpel, you testified in front of a Federal Grand Jury?

A.      I'm going to take the Fifth.

Q.      David Karpel was angry at you, wasn't he, for talking to April Higurea?

A.      One second. Let me ask her a question.

(Witness conferring with counsel.)

THE WITNESS: Okay. Repeat the question.

BY MS. BLISS:

Q.      David Karpel was angry at you for talking to April Higurea and telling her that you wanted to do the right thing, wasn't he?

A.      He was mad, yes.

Trial Transcript, September 24, 2019 testimony of witness Gary Rudnick, p. 25-81, l. 4-p. 25-82, l. 10.

64.     On September 23, 2019, during Rudnick's testimony at the trial, he testified that Defendant KARPEL was in multiple meetings about the alleged meeting at the Nugget casino in which Rudnick provided an inconsistent statement about the individuals present at the meeting.  Out of the presence of the jury, the defense counsel raised the fact that they received a letter from the USAONV from Dan Schiess, Esq. that Martin lied before the Grand Jury because he felt pressure from Defendant KARPEL to make up the side meeting and Martin fabricated the list of people that were alleged to be in the side meeting.  Based on this argument by defense counsel, the court allowed the questioning of Rudnick about if he also had issues with Defendant KARPEL pressuring him to lie before the Grand Jury.

/ / /

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

65.     During Rudnick's testimony at the trial, on September 24, 2019, Dan Hill, Esq. questioned Rudnick about the multiple statements he has made over the years regarding a side meeting and pushed Rudnick on providing conflicting stories regarding certain member participants during his meetings with Defendant KARPEL prior to testifying before the Grand Jury in Santa Ana, California.

66.     At the trial, Martin testified about Defendant KARPEL's involvement in directing the investigation of the RICO/VICAR murder case and developing the testimony that would ultimately be presented to the Grand Jury to ensure the Superseding RICO/VICAR Indictment would be secured. Martin, with his appointed lawyer present, testified at trial as follows:

> Q.     Okay. I just want to go back because I know this has been a long period of time, but do -- you recall that your first meeting with Mr. Karpel was April 29th, 2015, in Santa Ana?
>
> A.     I could -- yeah. I don't remember the date, but I remember meeting with him.
>
> Q.     Okay. Well, it was a pretty -- it was a pretty significant event, wasn't it? Because you called Agent Neal the next day and expressed to him that you were worried that the lawyer was mad with you.
>
> A.     Correct.
>
> Q.     And, so, my question is, what happened during that first meeting with Mr. Karpel that caused you to feel the next day that you needed to reach out to Agent Neal and say, look, what did I do wrong, I feel like he's mad with him?
>
> A.     Because it's the government. I'm scared of the government. Like, if I said something wrong, I didn't know if I was going to jail or not. I didn't know what going on.
>
> Q.     Okay.
>
> A.     Like, again, I didn't have a lawyer or anything at the time.
>
> Q.     Did you feel like, at that first meeting, that things that you were telling Mr. Karpel were things that he didn't want to hear?
>
> A.     I felt he didn't believe me.
>
> Q.     Was there something he did -- I mean, can you articulate something that he did that made you feel that way?
>
> A.     I -- just scary little man.
>
> Q.     I'm sorry?
>
> A.     Scary little man. A scary little man, you know?
>
> Q.     Oh. Well, was he -- was it because he got fired up and pounded the table?
>
> A.     He got fired up. He's just -- you know, he's -- I can't explain it because it's so long ago. You know, I was scared, you know.

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

1    Q.    So it was his demeanor during the meeting that caused you
           to be alarmed?
2    A.    Well, yeah.
     Q.    Okay. Did -- did he -- and you say he got fired up. Did
3          he get angry?
4    A.    I -- I don't know his demeanor when he gets angry. Alls I
           know he was -- it was just a scary situation for me.
5    Q.    Did he get loud?
     A.    Well, of course. He's a lawyer.
6    Q.    Did he get in your face?
     A.    He sat right across from me.
7    Q.    Did he make gestures that made him -- that made you think
           that he didn't buy your -- what you were saying?
8    A.    Ma'am, I know you're looking for direct answers but here's
9          the truth, the man scared me, he's the government, okay?
           You're trying to get feelings from me from back then and I
10         Don't know what to tell you, you know.
     Q.    Did he -- did he at any point in time, between that day
11         when you first met him back in April of 2015 and a week ago
           Sunday, offer to get you legal representation?
12   A.    No.
     Q.    During your meetings with him, did he tell you that you
13         were lying?
14   A.    I don't -- I don't recall that. I don't remember.
     Q.    During the meetings that you had with Mr. Karpel and
15         members of the federal government, were you told about evidence
           that they claimed to have that they thought incriminated you?
16   A.    No.
     Q.    Were you told about conversations that Mr. Karpel or other
17         members of the federal government had had with other people
           about the Vagos or what went on at the Nugget on
18         September 23rd, 2011?
19   A.    No.
     Q.    Were you shown documents that purported to be other
20         People's statements to law enforcement?
21   A.    No.
     Q.    Were you ever shown what appeared to be, you know,
22         transcripts of court testimony?
     A.    No.
23   Q.    Were you ever encouraged to speak to somebody else that was
           assisting the federal government?
24   A.    I don't understand the question.
     Q.    Well, during the course of your meetings with Mr. Karpel
25         and members of federal law enforcement, you became aware that
26         there were people who were cooperating and providing the
           federal government with information, didn't you?
27   A.    Yeah. I heard something like that. There was other
           witnesses. That's all I know.
28

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

16 of 43

1
Q.    Okay. And that's something that Mr. Karpel and the members
      of law enforcement that you met with told you?

2
A.    No. Karpel was trying to get the answers from me.
Q.    Okay. Did anybody ever encourage you to try to meet with

3
      any of these other people that were helping the federal
      government?

4
A.    No. Excuse me.
Q.    Did anybody from the federal government ever tell you that

5
      Mr. Karpel was unhappy with your statements?

6
A.    Not to my knowledge.
Q.    Is it fair to say -- I think you described for us that your

7
      first meeting with Mr. Karpel, you were intimidated by him,
      both because of his position and his demeanor?

8
A.    Correct.
Q.    And the circumstances of the encounter?

9
A.    Correct.
Q.    Did that continue throughout every subsequent meeting you

10
      had with Mr. Karpel?

11
A.    I was always nervous to see that man.
Q.    And did you feel pressure to try to please him?

12
A.    Yes.
Q.    Okay. And, specifically, the pressure to try to please him

13
      was to tell him a version of events that he wanted to hear?

14
A.    I -- yeah.
Q.    And because of the pressure that you felt, did you change

15
      your story about what happened at the Nugget on September 23rd,
      2011?

16
A.    Yes.
Q.    And I just want to talk about some specific areas, where

17
      your -- where your story about the events changed because of

18
      that pressure. Specifically, did you change your story as to
      whether the killing of Jethro Pettigrew was a planned hit?

19
A.    Yes.
Q.    Okay. Did you change your story as to whether or not the

20
      Vagos international leadership had issued a green light to kill

21
      Pettigrew?

22
A.    Yes.
Q.    Did you change your story as to whether you participated in
      some sort of side meeting after the meeting at the Nugget on

23
      September 23rd, 2011?

24
A.    No.
Q.    Okay. Specifically, I want to talk to you about -- and I'm

25
      just going to -- I want to talk to you about this one
      particular issue. On April 29th, 2015, when you spoke with

26
      Mr. Karpel and members of federal law enforcement, did you --
      did you tell them that you might have observed a side meeting

27
      but that you were not a participant in it?

28

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

1    A.    I told them I was out there saying hi to the brothers and
           stuff.
2    Q.    Okay.
     A.    I was out there -- I don't know what you called a meeting.
3          Everybody was out there.
     Q.    Okay. Well, one of the topics that repeatedly comes up in
4          your interviews with federal law enforcement is whether or not
           there was a side meeting after the all members meeting that
5          night.
6    A.    I don't --
     Q.    Right?
7    A.    I don't think -- I don't -- I don't think it was a side
           meeting.
8    Q.    Okay. So, let me move forward and I'll circle back to
           this.
9          Did you change -- as a result of the pressure that you
           felt, did you change your story about who attended a side
10         meeting?
11   A.    I got the -- yes.
     Q.    And did you also change your story about what was
12         supposedly said at this "side meeting"?
     A.    No.
13   Q.    As a result of the pressure that you felt, did you change
           your story as to whether or not Jeff Voll asked you to lie
14         about the green light -- a green light at the trial in Reno?
15   A.    Yes.
     Q.    And did you change your story about whether it was the
16         Vagos that sent you up to Reno to lie?
17   A.    Yes.
     Q.    And did you change your story about David Houston, who was
18         Ernesto Gonzalez's attorney in Reno, did you change your story
           about whether he provided you a script of how to lie at the
19         trial?
20   A.    Yes.
     Q.    And did you also change your story about whether the
21         international leadership issued an order to kill
           Bradley Campos?
22   A.    Excuse me?
     Q.    Subsequent -- the -- let me see if I can orient you because
23         I may have just jumped too far. After the situation happened
           at the Nugget, Rudnick was kicked out of the Vagos; right?
24   A.    Yes.
     Q.    And there were some discussions between you and Mr. Karpel
25         and members of federal law enforcement having to do with the
           fact that Bradley Campos didn't act quick enough to kick
26         Rudnick out or was supporting Rudnick in some manner.
           Do you recall those discussions?
27   A.    Correct.
28

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

| | |
|---|---|
| 1 | Q.     Okay. And -- and at least during some of your meetings with federal law enforcement, you said that there was a decision from the international leadership of the Vagos to put a green light on Campos and kill him. |
| 2 | |
| 3 | A.     We were told to handle him. I don't. . . know killing. |
| | Q.     Okay. So my question is, is that something that you changed your story on as a result of the pressure you felt -- |
| 4 | |
| 5 | A.     Yes. |
| | Q.     -- through Karpel? |
| 6 |         The answer is yes? |
| | A.     Yes. |
| 7 | Q.     Okay. Thank you. I'm sorry. I just don't think it made it to the record. |
| 8 | |

9   Trial Transcript, October 2, 2019 (PM) testimony of witness Jefferson Martin, p. 135, l. 21-p. 143, l.

10   10.

11       67.     On October 9, 2019, during Martin's testimony, he testified that he was threatened by

12  Defendant KARPEL and feared Defendant KARPEL because Defendant KARPEL was mad at him,

13  and Martin therefore provided false testimony to make Defendant KARPEL happy. Martin further

14  testified that morning that he was influenced by the power that Defendant KARPEL had over him and

15  Defendant KARPEL's insistence that Defendant KARPEL wanted to hear Martin say that a

16  "greenlight" was ordered and Martin lied due to Defendant KARPEL's influence over him and

17  Defendant KARPEL's desire to secure the Superseding RICO/VICAR Indictment. Upon information

18  and belief, these meetings between Martin and Defendant KARPEL occurred on April 29, 2015 and

19  May 10, 2016.

20       68.     Upon information and belief, meetings also took place between Rivera and Defendant

21  KARPEL on May 10, 2016 and March 14, 2017.   Rudnick, Martin, and Rivera testified before the

22  Grand Jury on June 7, 2017, to provide testimony that was ultimately used to indict the Plaintiffs in the

23  Superseding RICO/VICAR Indictment in the District of Nevada.   When the DOJ and USAONV

24  brought the Superseding RICO/VICAR Indictment against the Plaintiffs, the Government knew or

25  should have known that the Grand Jury testimony was based on lies and material misrepresentations in

26  large part by the pressure exerted by Defendant KARPEL on witnesses Rudnick and Martin to fabricate

27  evidence as testified by these witnesses in detail during the trial.

28

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

19 of 43

69.     On February 24, 2019, the jury acquitted all defendants at trial and Judge Gloria M. Navarro released Plaintiffs GILLESPIE and GONZALEZ from custody at NSDC that same day. Thereafter, the bonds of the remaining Plaintiffs were exonerated and their pretrial supervision, curfew, and GPS monitoring ceased that same day.

**FIRST CAUSE OF ACTION**
**(FALSE ARREST AND IMPRISONMENT IN VIOLATION OF FIFTH AMENDMENT)**
**PLAINTIFFS *BIVENS* CLAIM AGAINST DEFENDANTS KARPEL AND DOES 1 THROUGH 100**

70.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

71.     Defendants KARPEL and DOES 1 through 100's approval of and return of the True Bill in the Superseding RICO/VICAR Indictment against Plaintiffs herein and their other co-Defendants in the Superseding RICO/VICAR Indictment knowing that Rudnick had recanted before he testified before the Grand Jury in Santa Ana, California and knowing that Defendant KARPEL had continual and substantial involvement in directing the investigation and developing the witness testimony that ultimately led to Plaintiffs being charged in the Superseding RICO/VICAR Indictment with an overt act being the alleged murder in Sparks, Nevada in *United Sates v. Palafox, et. al.*, 2:16-cr-265-GMN-CWH [ECF No. 13] as alleged in detail in the Statement of Facts caused Plaintiffs significant pain and suffering by depriving them of their life and liberty absent due process of law.

72.     When, as Defendant KARPEL did here, "prosecutors abandon the confines of their offices and assume the role of an investigator, they are exposed to the same liability which attaches to any officer or investigator for performing that investigative function." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74 (1993) ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."); *Burns v. Reed*, 500 U.S. 478, 494-496 (1991).

73.     Defendants KARPEL and DOES 1 through 100's approval of and return of the True Bill in the Superseding RICO/VICAR Indictment against Plaintiffs knowing that Rudnick had recanted and/or lied to the Grand Jury and knowing the other Government witnesses misrepresented what had occurred in Sparks and/or lied or made material misrepresentations to the Grand Jury when they

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

testified because Defendant KARPEL and DOES 1 through 100 had interviewed these Government witnesses on multiple occasions and their stories constantly changed and developed as the interviews progressed while Defendant KARPEL exerted his influence on these witnesses as they testified about at trial.

74.     Plaintiffs have a Fifth Amendment right to be free from false arrest and imprisonment. On information and belief, Defendants KARPEL and DOES 1 through 100 caused and effectuated the Superseding RICO/VICAR Indictment and arrest of Plaintiffs knowing that Rudnick recanted his prior testimony, lies, and material misrepresentations to the Grand Jury, pressure on the Government witnesses to fabricate the story of the shooting of Pettigrew by Defendants KARPEL and DOES 1 through 100 in witness interviews with Rudnick, Martin, and Rivera.  With that knowledge, Defendants KARPEL and DOES 1 through 100 collectively indicted and arrested Plaintiffs and imprisoned Plaintiffs or caused them to be under the supervision of the federal government through pretrial services and/or on GPS monitoring while they awaited trial for two years and eight months.  They were also deprived of their second amendment right to bear arms and other rights to life and liberty and to travel freely because their passports were held by pretrial services.

75.     On information and belief, at all relevant times, Defendants KARPEL and DOES 1 through 100 committed, knew of, and/or acquiesced in all of the above-described acts.  These Defendants' conduct was done intentionally, with deliberate indifference, negligently, and/or with reckless disregard, of Plaintiffs' rights.  By the acts alleged herein, Defendants KARPEL and DOES 1 through 100's conduct has proximately caused harm to Plaintiffs.

76.     On information and belief, the actions, orders, authorizations, and other conduct of Defendants KARPEL and DOES 1 through 100 deprived Plaintiffs of their right to be free from unlawful arrest and imprisonment and gives rise to a cause of action for damages directly under the Fifth Amendment pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). As a result of Defendants KARPEL and DOES 1 through 100's actions, Plaintiffs suffered damages, including but not limited to actual damages for their lost wages and loss of employment and career development and opportunity, damages for their wrongful prosecution and loss of liberty, damages for the loss of their federal rights while under Indictment and on federal supervision

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

1   and/or their incarceration and custodial supervision, damages for their humiliation, reputational harm,

2   fear, and severe emotional distress.

3                                   **SECOND CAUSE OF ACTION**
4              **(VIOLATION OF THE DUE PROCESS CLAUSE OF FIFTH AMENDMENT)**
    **PLAINTIFFS *BIVENS* CLAIM AGAINST DEFENDANTS KARPEL AND DOES 1 THROUGH 100**

5

6       77.     Plaintiffs reallege and incorporate by reference each and every allegation contained in

7   the preceding paragraphs as if fully set forth herein.

8       78.     Defendants KARPEL and DOES 1 through 100's approval of and return of the True Bill

9   in the Superseding RICO/VICAR Indictment against Plaintiffs based upon the recanted testimony of

10  Rudnick and upon information and belief the lies and material misrepresentations of Rudnick, Martin,

11  and Rivera when they testified before the Grand Jury caused Plaintiffs significant pain and suffering

12  and severe emotional distress while depriving them of their life and liberty absent due process of law.

13      79.     The Due Process Clause requires "fair play" in the criminal justice system and protects

14  defendants from fundamentally unfair prosecutorial conduct.  *See Betterman v. Montana*, 136 S. Ct.

15  1609, 1613 (2016) (explaining Due Process Clause exists "as a safeguard against fundamentally unfair

16  prosecutorial conduct"); *Doggett v. United States*, 505 U.S. 647, 666 (1992) (Thomas, J., dissenting)

17  ("[T]he Due Process Clause always protects defendants against fundamentally unfair treatment by the

18  government in criminal proceedings."); *United States v. American Honda Motor Co.*, 273 F. Supp. 810,

19  819 (N.D. Ill. 1967) (explaining Due Process Clause "is essentially a recognition of the requirement of

20  fundamental fairness and fair play").

21      80.     Courts have recognized the unfairness inherent in fabricating evidence to secure an

22  Indictment and charging in successive prosecutions offenses arising out of the same transaction; "[t]he

23  government is not a ringmaster for whom individuals and corporations must jump through a hoop at

24  their own expense each time it commands."  *American Honda Motor Co., Inc.*, 273 F. Supp. at 820;

25  *see Adamson v. Ricketts*, 865 F.2d 1011, 1017–20 (9th Cir. 1988) (en banc); *United States v. Martinez*,

26  785 F.2d 663, 669 (9th Cir. 1986).

27      81.     Plaintiffs have a Fifth Amendment right to be free from violations of the Due Process

28  Clause in the Fifth Amendment.

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

22 of 43

82.     On information and belief, Defendants KARPEL and DOES 1 through 100 caused and effectuated the indictment and arrest of Plaintiffs knowing of the recanted testimony by Rudnick and the lies and material misrepresentations presented to the Grand Jury by the government witnesses Rudnick, Martin, and Rivera therefore violating Plaintiffs' rights not to be subjected to violations of the Due Process Clause in the Fifth Amendment.

83.     Defendants KARPEL and DOES 1 through 100 wrongfully indicted and prosecuted Plaintiffs, wrongfully imprisoned Plaintiffs GONZALEZ and GILLESPIE in federal custody for two years and eight months at NSDC, wrongfully imprisoned Plaintiffs MORALES AND GARCIA for fifty (50) days at NSDC, wrongfully imprisoned Plaintiff CAMPOS for thirteen (13) days, subjected Plaintiff MORALES to a 9:00 pm curfew required him to wear a GPS monitor for a little over two years a six months which significantly impacted his ability to work as a licensed contractor in the state of California and run his contracting business and further subjected him to reputational harm and prevented him from getting referral business, subjected Plaintiff CAMPOS to pretrial services supervision for nearly two years and eight months impacting him life and liberty and ability to travel freely, subjected Plaintiffs MORALES and GARCIA to pretrial services supervision for nearly two years and six months impacting their life and liberty and ability to travel freely, and deprived all Plaintiffs of their Second Amendment right to bear arms while in custody and/or under pretrial services supervision.

84.     On information and belief, at all relevant times, Defendants KARPEL and DOES 1 through 100 committed, knew of, and/or acquiesced in all of the above-described acts.  These Defendants' conduct was done intentionally, with deliberate indifference, negligently, and/or with reckless disregard, of Plaintiffs' rights.  By the acts alleged herein, these Defendants' conduct has proximately caused harm to Plaintiffs.

85.     On information and belief, the actions, orders, authorizations, and other conduct of Defendants KARPEL and DOES 1 through 100 deprived Plaintiffs of their right to be free from violations of the Due Process Clause in the Fifth Amendment and gives rise to this cause of action for damages directly under the Fifth Amendment pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  As a result of Defendant KARPEL and DOES 1

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

through 100's actions, Plaintiffs suffered damages, including but not limited to, actual damages for lost wages and career opportunity and advancement, significant pain and suffering and severe emotional distress while depriving them of their life and liberty absent due process of law, humiliation, fear, reputational harm, loss of life and liberty, wrongful incarceration and/or custodial supervision, and severe emotional distress.

### THIRD CAUSE OF ACTION
### (VIOLATION OF THE EIGHTH AMENDMENT)
### PLAINTIFFS *BIVENS* CLAIM AGAINST DEFENDANTS KARPEL AND DOES 1 THROUGH 100

86.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

87.     Defendants KARPEL and DOES 1 through 100's approval of and return of the True Bill in the Superseding RICO/VICAR Indictment against Plaintiffs and their co-defendants knowing that Rudnick had recanted before he testified before the Grand Jury in California and knowing that KARPEL had continual and substantial involvement in directing the investigation and developing the witness testimony of the Government witnesses that ultimately led to Plaintiffs being charged in the Superseding RICO/VICAR Indictment with an overt act being the alleged murder in Sparks, Nevada in *United Sates v. Palafox, et. al.*, 2:16-cr-265-GMN-CWH [ECF No. 13] as alleged in detail in the Statement of Facts caused Plaintiffs significant pain and suffering and caused Plaintiffs severe psychological harm, constituting cruel and unusual punishment in violation of Plaintiffs' rights under the Eighth Amendment to the United States Constitution.

88.     The actions of Defendants KARPEL and DOES 1 through 100 in bringing this Superseding RICO/VICAR Indictment against Plaintiffs caused Plaintiffs severe psychological harm, constituting cruel and unusual punishment in violation of Plaintiffs' rights under the Eighth Amendment to the United States Constitution.

89.     Defendants KARPEL and DOES 1 through 100 violated Plaintiffs' constitutional rights by indicting them based on fabricated evidence, lies, recanted testimony, and material misrepresentations to the Grand Jury, by falsely imprisoning and/or subjecting them to custodial supervision and/or GPS monitoring as explained in detail on the Statement of Facts herein and by

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

24 of 43

maliciously prosecuting them (i.e., without the due process of law accorded to them in the Fifth Amendment) and deprived Plaintiffs of their life, liberty and, property rights, which constitutes cruel and unusual punishment in contravention to the Eighth Amendment to the United States Constitution.

90.     As a direct, proximate and, foreseeable cause of Defendants KARPEL and DOES 1 through 100's egregious conduct, performed in their individual capacities, Plaintiffs' Eighth Amendment Constitutional rights, under *Bivens*, were deprived and, therefore, Plaintiffs are entitled to monetary damages for their injuries, including, without limitation: compensatory damages for the impairment to their reputation; personal humiliation; mental anguish and suffering; mental and emotional distress; financial harm; and the loss of gainful employment, including, without limitation, and future impairment to Plaintiffs' chosen professions.

**FOURTH CAUSE OF ACTION**
**(CONSPIRACY TO DEPRIVE EQUAL PROTECTION AND DUE PROCESS RIGHTS**
**(42 U.S.C. § 1985(3))**
**PLAINTIFFS *BIVENS* CLAIM AGAINST DEFENDANTS KARPEL AND DOES 1 THROUGH 100**

91.     Plaintiffs reallege and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

92.     Upon information and belief, Defendants KARPEL and DOES 1 through 100 entered into an agreement to act in concert for the purpose of wrongfully indicting and maliciously prosecuting Plaintiffs by bringing a Superseding RICO/VICAR Indictment against them for a felony RICO/VICAR Conspiracy based on fabricated evidence, recanted testimony, lies, and material misrepresentation as described in the Statement of Facts herein; thereby depriving Plaintiffs of the equal protection of the laws.  The conspiracy included, but was not limited to, an agreement to indict, detain, attempt to interrogate, and arrest Plaintiffs in furtherance of the plan and scheme to secure a felony conviction against them for RICO Conspiracy and/or VICAR Murder cause them to be subjected to possible sentence of life in prison based on fabricated evidence, recanted testimony, lies, and material misrepresentations to the Grand Jury at the insistence of Defendants KARPEL and DOES 1 through 100.

/ / /

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

25 of 43

93. The Due Process Clause requires "fair play" in the criminal justice system and protects defendants from fundamentally unfair prosecutorial conduct. *See Betterman v. Montana*, 136 S. Ct. 1609, 1613 (2016) (explaining Due Process Clause exists "as a safeguard against fundamentally unfair prosecutorial conduct"); *Doggett v. United States*, 505 U.S. 647, 666 (1992) (Thomas, J., dissenting) ("[T]he Due Process Clause always protects defendants against fundamentally unfair treatment by the government in criminal proceedings."); *United States v. American Honda Motor Co.*, 273 F. Supp. 810, 819 (N.D. Ill. 1967) (explaining Due Process Clause "is essentially a recognition of the requirement of fundamental fairness and fair play").

94. Courts have recognized the unfairness inherent in fabricating evidence to secure an Indictment and charging in successive prosecutions offenses arising out of the same transaction; "[t]he government is not a ringmaster for whom individuals and corporations must jump through a hoop at their own expense each time it commands." *American Honda Motor Co., Inc.*, 273 F. Supp. at 820; *see Adamson v. Ricketts*, 865 F.2d 1011, 1017–20 (9th Cir. 1988) (en banc); *United States v. Martinez*, 785 F.2d 663, 669 (9th Cir. 1986).

95. Defendants KARPEL and DOES 1 through 100 performed several acts in furtherance of this conspiracy, including, but not limited to, securing the Superseding RICO/VICAR Indictment against Plaintiffs based on fabricated evidence, recanted testimony, lies, and material misrepresentations to the Grand Jury at the insistence of Defendants KARPEL and DOES 1 through 100 as described in the Statement of Facts herein, violating Plaintiffs' Due Process rights and rights under the Fifth Amendment, falsely arresting and/or imprisoning Plaintiffs, and maliciously prosecuting Plaintiffs. The jury acquitted all Plaintiffs on all counts after an eight-month trial and Plaintiffs GONZALEZ and GILLESPIE were released from federal custody that day. The remaining Plaintiffs bonds were exonerated and they were removed from pretrial services supervision that day.

96. Defendants KARPEL and DOES 1 through 100's actions were not justified under the facts and circumstances presented herein and therefore the absence of justification by Defendants KARPEL and DOES 1 through 100 is above contestation under the totality of the circumstances presented in Plaintiffs' case.

/ / /

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

97.     Defendants KARPEL and DOES 1 through 100's plan and scheme and the overt acts described herein were taken in furtherance of their conspiracy.

98.     The conspiracy in this matter was aided and furthered by the DOJ, the USAONV, AFT, DHS, and ROES 1 through 100 in concert with Defendants KARPEL and DOES 1 through 100 to fabricate evidence to secure the Superseding RICO/VICAR Indictment.

99.     The amendment to Title 42, United States Code, Section 1988 provides attorney's fees in actions under Title 42, United States Code, Section 1985.  Attorneys' fees are sought in this Complaint and should be awarded accordingly.

100.     As a result of the conspiracy between and amongst Defendants KARPEL and DOES 1 through 100, and the overt actions taken in furtherance thereof, Plaintiffs suffered damages, including but not limited to, actual damages for lost wages and loss of career opportunity and advancement, loss of life and liberty, humiliation, reputational harm, fear, pain and suffering, and emotional distress.

### Federal Tort Claims Act ("FTCA") – General Allegations

101.     Pursuant to Title 28, United States Code, Section 1346(b), "federal district courts have jurisdiction over a certain category of claims for which the [UNITED STATES] has waived its sovereign immunity and 'render[ed]' itself liable," including, without limitation, "'claims that are:  [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b)).

102.     "A claim comes within this jurisdictional grant – and thus is 'cognizable' under § 1346(b) – if it is actionable under § 1346(b).  And a claim is actionable under § 1346(b) if it alleges the six elements outlined above." *Id.* (citing *Loeffler v. Frank*, 486 U.S. 549 (1988)).

103.     The FTCA, Title 28, United States Code, Section 2671 et seq., is the exclusive remedy for tort actions against a Federal agency (28 U.S.C. § 2679(a)) and against Federal employees who commit torts while acting within the scope and course of their employment (28 U.S.C. § 2679(b)(1)).

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

104.    At all times relevant herein, Defendants KARPEL, DOES 1 through 100, and any and all unnamed employees of the DOJ, the USAONV, the ATF, and the DHS were acting within the scope and course of their employment within the DOJ, were acting as agents of Defendant UNITED STATES, and were acting as DOJ Attorneys, Assistant United States Attorneys, and investigative and/or law enforcement officers and agents.  Defendants KARPEL and DOES 1 through 100 performed acts in their individual capacities for which Defendants KARPEL and DOES 1 through 100 are, and remain, personally liable.

105.    With regard to Defendants KARPEL and DOES 1 through 100's tortious conduct that was performed while they were "acting within the scope of [their official] office[s] or employment at the time of the incident out of which the [Plaintiffs'] claim[s] arose," Defendant UNITED STATES is solely liable for that conduct as mandated by Title 28, United States Code, Section 2679(d)(2)) and the Federal Employees Liability Reform & Tort Compensation Act of 1988 ("Westfall Act").

106.    Similarly, Plaintiffs exclusive remedy for their tort-based claims against Defendants KARPEL and DOES 1 through 100's employer is this claim against the UNITED STATES pursuant to Title 28, United States Code, Section 2679(a).

107.    To that end, Title 28, United States Code, Section 2680(h) expressly provides that the UNITED STATES is also liable for certain intentional torts that are based on the "acts or omissions" of an "investigative or law enforcement officer" and include "[a]ny claim arising out of ... false imprisonment, false arrest, [and] malicious prosecution . . . ." *Millbrook v. United States*, 569 U.S. 50, 52 (2013) (citing 28 U.S.C. § 2680(h); *see also Levin v. United States*, 568 U.S. 503 (2013)).  The DOJ, the USAONV, and ATF are agencies of the government of the United States of America.  The Law Enforcement Proviso, inserted into Subsection 2680(h), directs "that, with regard to acts or omissions of investigative or law enforcement officers of the United States Government," the general waiver of sovereign immunity in the FTCA "applies to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution."

108.    Here, Plaintiffs have valid tort claims arising out of, related to and connected with Defendants KARPEL and DOES 1 through 100's tortious conduct that was performed in their individual capacities as detailed in the Statement of Facts.  Defendant UNITED STATES is liable for

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

the acts of Defendants KARPEL and DOES 1 through 100 pursuant to the doctrine of *respondeat superior* as recognized by the Ninth Circuit Court of Appeals in *Xue Lu v. Powell*, 621 F.3d 944 (9th Cir. 2010).  Defendant UNITED STATES, if a private person, would be liable to the Plaintiffs for the acts and omissions of its employees and agents described herein under the law of the place where said acts and omissions occurred, including, without limitation, the following claims:

### FIFTH CAUSE OF ACTION
### (FALSE ARREST - FTCA)
### PLAINTIFFS CLAIM AGAINST DEFENDANT UNITED STATES

109. Plaintiffs reallege and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

110. Defendants KARPEL and DOES 1 through 100 effected an unlawful arrest of Plaintiffs.

111. Defendants KARPEL and DOES 1 through 100 falsely arrested Plaintiffs on the RICO/VICAR Conspiracy case based on fabricated evidence, recanted testimony, lies, and material misrepresentations to the Grand Jury elicited by Defendants KARPEL and DOES 1 through 100.

112. Defendants KARPEL and DOES 1 through 100's approval of and return of the True Bill in the Superseding RICO/VICAR Indictment against Plaintiffs and the other Defendants in the RICO/VICAR Conspiracy criminal case knowing that Mr. Rudnick had recanted before he testified before the Grand Jury in Santa Ana, California and knowing that KARPEL had continual and substantial involvement in directing the investigation and developing the witness testimony of the government witnesses that ultimately led to Plaintiffs being charged in the Superseding RICO/VICAR Indictment with an overt act being the alleged murder in Sparks, Nevada in *United Sates v. Palafox, et. al.*, 2:16-cr-265-GMN-CWH [ECF No. 13] as alleged in detail in the Statement of Facts caused Plaintiffs significant pain and suffering and other damages described herein by depriving them of their life and liberty absent due process of law.

113. Defendants KARPEL and DOES 1 through 100's approval of and return of the True Bill in the Superseding RICO/VICAR Indictment against Plaintiffs knowing of this fabricated testimony, recanted testimony of Rudnick, lies, and material misrepresentations to the Grand Jury prior to indicting Plaintiffs on June 14, 2017 caused Plaintiffs significant pain and suffering by depriving them of their

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

29 of 43

life and liberty absent due process of law.

114.    The Law Enforcement Proviso, inserted into Subsection 2680(h), directs "that, with regard to acts or omissions of investigative or law enforcement officers of the United States Government," the general waiver of sovereign immunity in the FTCA "applies to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." False arrest is derivative tort stemming from false imprisonment and the Law Enforcement Proviso would cover this cause of action.

115.    As a direct, proximate, and foreseeable cause of Defendants KARPEL and DOES 1 through 100's tortious acts related to the effectuation of the unlawful arrest and malicious prosecution of Plaintiffs based on fabricated evidence, recanted testimony, lies, and material misrepresentations to the Grand Jury and these acts performed in their official capacity, scope, and employment, the UNITED STATES is, and remains, liable; Plaintiffs suffered damages as hereinafter set forth.

**S<small>IXTH</small> C<small>AUSE OF</small> A<small>CTION</small>**
**(F<small>ALSE</small> I<small>MPRISONMENT</small> - FTCA)**
**P<small>LAINTIFFS</small> C<small>LAIM</small> A<small>GAINST</small> D<small>EFENDANT</small> UNITED STATES**

116.    Plaintiffs reallege and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

117.    In Nevada, "[f]alse imprisonment is an unlawful violation of the personal liberty of another, and consists in confinement or detention without legal sufficient authority." Nev. Rev. Stat. § 200.460.  "To establish false imprisonment of which false arrest is an integral part, it is . . . necessary to prove that the person be restrained of his liberty under probable imminence of force without any legal cause or justification." *Jones*, 2011 WL 13305450 at *3 (quoting *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981).  "Thus, 'an actor is subject to liability to another for false imprisonment 'if (a) he acts intending to confine the other . . . within the boundaries fixed by the actor, and (b) his act directly or indirectly results in a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it.'" *Id.* (quoting Restatement (Second) of Torts § 35 (1965)).

118.    Plaintiffs here, affirmatively allege that they were unlawfully arrested and maliciously prosecuted based on fabricated evidence, recanted testimony, lies, and material misrepresentations to

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

the Grand Jury used to secure the Superseding RICO/VICAR Indictment against Plaintiffs, and Plaintiffs were subsequently imprisoned and/or forced into custody from GPS monitoring and restraints on their liberty, and/or pretrial services supervision by Defendant UNITED STATES as described in detail herein until their acquittal on all counts following an eighth month trial.

119.    The Law Enforcement Proviso, inserted into Subsection 2680(h), directs "that, with regard to acts or omissions of investigative or law enforcement officers of the United States Government," the general waiver of sovereign immunity in the FTCA "applies to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution."

120.    Plaintiffs further alleges that as a direct, proximate and, foreseeable cause of those tortious acts related to Plaintiffs' incarceration (i.e., acts performed by Defendants KARPEL and DOES 1 through 100 in their official capacity, scope and, employment, these acts: (a) were performed with the intention of confining Plaintiffs to prison; (b) they directly or indirectly resulted in Plaintiffs' confinement; and (c) Plaintiffs were conscious of the unlawful confinement.  As a result, the UNITED STATES is, and remains, liable; Plaintiffs suffered damages as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - FTCA)
### PLAINTIFFS CLAIM AGAINST DEFENDANT UNITED STATES

121.    Plaintiffs reallege and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

122.    In *Sheehan v. United States*, 896 F.2d 1168, 1172 (9th Cir. 1990), the Ninth Circuit Court of Appeals expressly recognized the appropriateness of an intentional infliction of emotional distress claim in FTCA actions.  To that end, in Nevada, "[t]he elements of a cause of action for intentional infliction of emotional distress are '(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation.'" *Dillard Dept. Stores, Inc. v. Beckwith*, 115 Nev. 372, 378, 989 P.2d 882, 886 (Nev. 1999).

123.    The conduct of Defendants KARPEL and DOES 1 through 100, as set forth herein, was extreme and outrageous and beyond the scope of conduct which should be tolerated by citizens in a

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

democratic and civilized society. Defendants KARPEL and DOES 1 through 100 committed these extreme and outrageous acts with the intent to indict Plaintiffs and inflict severe mental and emotional distress upon Plaintiffs.

124.   As a proximate result of Defendants KARPEL and DOES 1 through 100's willful, intentional and malicious conduct, Plaintiffs suffered severe and extreme emotional distress. Specifically, Plaintiffs suffered and/or continue to suffer from the following physical manifestations of emotional distress:

- Plaintiff GONZALEZ: anxiety that manifests in him pulling out the hair in goatee that left a bald spot on the middle of his chin and pulling out hair in his eyebrows; social anxiety that causes increased breathing, nervousness and desire to leave and not be around a group of people; stomach issues that causes him to immediately have to go to the bathroom after eating; sleep disturbances; night terrors while sleeping; mood swings, short with people, and impatient; psychologically impacted from the lights in jail always being on at night and has to dim the lights while awake and sleep in complete darkness; relapses when driving due to anxiety; affected libido, and other ailments

- Plaintiff GILLESPIE: weight loss; sleep disturbances; anxiety causing difficulty focusing; vivid dreams and nightmares; and other ailments

- Plaintiff MORALES: post-traumatic stress disorder causing anxiety, hallucinations, and paranoia; sleep disturbances; nightmares; and other ailments

- Plaintiff GARCIA: nightmares; sleep disturbances; gunshot wound during incident; post-traumatic stress disorder causing anxiety, racing thoughts and paranoia; worrying about surroundings causing inability to be still; and other ailments

- Plaintiff CAMPOS: sleep disturbances; bowel disturbances; throwing up; worrying about death; sadness; anxiety of early death; nightmares; wake up crying; and other head cold related ailments

Therefore, Plaintiffs are entitled to an award of damages as against Defendant UNITED STATES.  Plaintiffs have also suffered general damages as hereinafter set forth and are entitled to

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

compensation therefor.

**EIGHTH CAUSE OF ACTION**
**(MALICIOUS AND VINDICTIVE PROSECUTION - FTCA)**
**PLAINTIFFS CLAIM AGAINST DEFENDANT UNITED STATES**

125.     Plaintiffs reallege and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

126.     In Nevada, "[a] person who maliciously and without probable cause therefor, causes or attempts to cause another person to be arrested or proceeded against for any crime of which that person is innocent" is liable for malicious prosecution.  Nev. Rev. Stat. § 199.310.  In this regard, to state a claim for malicious prosecution under Nevada law, a Plaintiff must allege: "(1) that the defendant lacked probable cause to initiate a prosecution; (2) malice; (3) the prior criminal proceedings were terminated in his favor; and (4) Plaintiff suffered damages." *Anderson v. United States*, 2019 WL 6357256 at *2 (D. Nev. 2019) (quoting *LaMantia v. Redisi*, 118 Nev. 27, 30, 38 P.3d 877, 879 (Nev. 2002).

127.     The Due Process Clause requires "fair play" in the criminal justice system and protects defendants from fundamentally unfair prosecutorial conduct.  *See Betterman v. Montana*, 136 S. Ct. 1609, 1613 (2016) (explaining Due Process Clause exists "as a safeguard against fundamentally unfair prosecutorial conduct"); *Doggett v. United States*, 505 U.S. 647, 666 (1992) (Thomas, J., dissenting) ("[T]he Due Process Clause always protects defendants against fundamentally unfair treatment by the government in criminal proceedings."); *United States v. American Honda Motor Co.*, 273 F. Supp. 810, 819 (N.D. Ill. 1967) (explaining Due Process Clause "is essentially a recognition of the requirement of fundamental fairness and fair play").

128.     Courts have recognized the unfairness inherent in fabricating evidence to secure an Indictment and charging in successive prosecutions offenses arising out of the same transaction; "[t]he government is not a ringmaster for whom individuals and corporations must jump through a hoop at their own expense each time it commands." *American Honda Motor Co., Inc.*, 273 F. Supp. at 820; *see Adamson v. Ricketts*, 865 F.2d 1011, 1017–20 (9th Cir. 1988) (en banc); *United States v. Martinez*, 785 F.2d 663, 669 (9th Cir. 1986).

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

129.     The UNITED STATES and Defendant KARPEL and DOES 1 through 100 fabricated evidence to secure an Indictment against Plaintiffs as alleged in detail in the Statement of Facts herein. Specifically, Defendant KARPEL, through the government witnesses, presented recanted testimony, lies, and material misrepresentations of facts to the Grand Jury to secure the Superseding RICO/VICAR Indictment against Plaintiffs and prosecuted them throughout an eight-month trial wherein these lies were exposed by the government witnesses' trial testimony and a letter to defense counsel from Dan Schiess, Esq. sent during the trial that eventually resulted in an acquittal on all charges.  At no point in time did the USAONV and DOJ dismiss the case against Plaintiffs in light of the revelation of these lies and material misrepresentations to the Grand Jury that originally allowed the USAONV and DOJ to secure the indictment against Plaintiffs. Instead, the USAONV and DOJ pressed forward to verdict and the Plaintiffs were all acquitted on all charges.

130.     Plaintiffs here affirmatively allege that Defendant KARPEL and DOES 1 through 100's misleading and material representations and upon information and belief fabrication of evidence, lies and materially misleading testimony to the Grand Jury by the government witnesses to obtain the Superseding RICO/VICAR Indictment evidences the absence of probable cause, along with the malicious intent of Defendant KARPEL and DOES 1 through 100.

131.     Plaintiffs further allege that their acquittal on all charges at trial unequivocally establishes that the underlying action was terminated in Plaintiffs' favor.

132.     The Law Enforcement Proviso, inserted into Subsection 2680(h), directs "that, with regard to acts or omissions of investigative or law enforcement officers of the United States Government," the general waiver of sovereign immunity in the FTCA "applies to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution."

133.     As a direct and proximate result of the conduct set forth in this Complaint, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical injuries, loss of community and reputation, lost business opportunities, lost profits, lost wages, other damages, and actual and special damages.

134.     Plaintiffs are entitled to punitive damages in an amount to be proven at trial as the actions of Defendant KARPEL and DOES 1 through 100 are characterized by fraud, were committed

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

by each of them knowingly, willfully, and maliciously with the intent to harm injure, vex, harass, and oppress Plaintiffs, and was callous and done in wanton and reckless disregard of the Plaintiffs' rights. Plaintiffs have also suffered damages as hereinafter set forth.

**NINTH CAUSE OF ACTION**
**(ABUSE OF PROCESS - FTCA)**
**PLAINTIFFS CLAIM AGAINST DEFENDANT UNITED STATES**

135.   Plaintiffs reallege and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

136.   In Nevada, an abuse of process claim has two fundamental elements: (1) an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular conduct of a proceeding. *Executive Mgmt. Ltd. v. Ticor Title Ins. Co.*, 114 Nev. 823, 843, 963 P.2d 465, 478 (1998). The action for abuse of process hinges on the misuse of regularly-issued process. *Nevada Credit Rating Bureau, Inc. v. Williams*, 88 Nev. 601, 606, 503 P.2d 9 (1972).

137.   Defendants KARPEL and DOES 1 through 100's approval of and return of the True Bill in the Superseding RICO/VICAR Indictment against Plaintiffs and their 18 co-defendants in the RICO/VICAR Conspiracy Case knowing that Rudnick had recanted before he testified before the Grand Jury in Santa Ana, California and knowing that Defendant KARPEL had continual and substantial involvement in directing the investigation and developing the witness testimony through the government witnesses based on fabrication of evidence, recanted testimony, lies, and material misrepresentations of facts that ultimately led to Plaintiffs being charged in the Superseding RICO/VICAR Indictment with an overt act being the alleged murder in Sparks, Nevada in *United Sates v. Palafox, et. al.*, 2:16-cr-265-GMN-CWH [ECF No. 13] as alleged in detail in the Statement of Facts caused Plaintiffs significant pain and suffering by depriving them of their life and liberty absent due process of law.

138.   Plaintiffs here affirmatively allege that the government witnesses and Defendant KARPEL and DOES 1 through 100's misleading and material representations to the Grand Jury through Defendant KARPEL and the government witnesses and upon information and belief fabrication of evidence, recanted testimony, lies, and materially misleading statements of facts by the

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

35 of 43

government witnesses led by Defendants KARPEL and DOES 1 through 100 to obtain the Grand Jury Superseding RICO/VICAR Indictment evidences the absence of probable cause, along with the malicious intent of the Defendants.

139.    All of these actions reflect conduct that is unconscionable and falls well below the standard of behavior to be expected of agents, officers, and/or employees who represent Defendant UNITED STATES.

140.    This Superseding RICO/VICAR Indictment of Plaintiffs in the RICO Conspiracy case in violation of Plaintiffs' due process rights show a disconcerting pattern of abuse of process as the legally issued process was being used for the purposes of harassment and further detainment of Plaintiff GONZALEZ after his conviction was overturned in state court and Rudnick recanted which is a purpose other than that which it was designed by law to accomplish.

141.    The Law Enforcement Proviso, inserted into Subsection 2680(h), directs "that, with regard to acts or omissions of investigative or law enforcement officers of the United States Government," the general waiver of sovereign immunity in the FTCA "applies to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution."

142.    As a direct and proximate result of the conduct set forth in this Complaint, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, loss of wages, loss of employment and advancement, physical injuries, loss of community and reputation, lost business opportunities, lost profits, other damages, and actual and special damages to Plaintiffs.

**TENTH CAUSE OF ACTION**
**(NEGLIGENCE - FTCA)**
**PLAINTIFFS CLAIM AGAINST DEFENDANT UNITED STATES**

143.    Plaintiffs reallege and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

144.    At all times herein mentioned, Defendants were subject to a duty of care to avoid causing unnecessary distress to persons through their making of arrests.  The Defendants were responsible for conducting themselves in compliance with federal state and local laws, the United States Constitution, and the Code of Conduct for Judicial Employees.  The Defendants breached their duty in this regard in

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

all material respects by eliciting fabricated evidence, recanted testimony, lies, and material misrepresentations of facts to secure the Superseding RICO/VICAR Indictment, arresting Plaintiffs, incarcerating Plaintiffs, and commencing an illegal prosecution of Plaintiffs that resulted in their acquittal on all charges after an eighth month trial. The wrongful conduct of the Defendants, as set forth herein, did not comply with the standard of care to be exercised by reasonable persons, proximately causing Plaintiffs to suffer injuries and damages.

145.    As a proximate result of the Defendants' negligent conduct, Plaintiffs suffered severe physical injury, severe emotional and mental distress, and injury having a traumatic effect on the Plaintiffs' emotional tranquility, and damages ensued.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court enter a judgment in their favor and against Defendants as follows:

1.    Enter a declaratory judgment that Defendants violated Plaintiffs' rights under the U.S. Constitution and civil rights laws;

2.    Award Plaintiffs their nominal and actual damages in an amount to be determined at trial, and hold Defendants jointly and severally liable for these nominal and actual damages;

3.    Award Plaintiffs compensatory damages in an amount to be determined at trial, and hold Defendants jointly and severally liable for these compensatory damages;

4.    Award Plaintiffs punitive damages in an amount to be determined at trial against Defendants KARPEL and DOES 1 through 100;

5.    Award Plaintiffs general damages in an amount to be proven at trial as to each and every claim herein;

6.    Award Plaintiffs pre-judgment and post-judgment interest as allowed by law;

7.    Award Plaintiffs their reasonable costs, expenses and, attorneys' fees, pursuant to all applicable state and federal statutes, codes, and rules and as allowed;

8.    Grant such further relief as this Court deems just and appropriate.

/ / /

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

1

**DEMAND FOR JURY TRIAL**

2       Each and every Plaintiff named herein hereby demands a trial by jury on all issues in this action

3   to the extent authorized by law.

4       DATED this 22nd day of February 2022.

5                                           **MELANIE HILL LAW PLLC**

6

7                                             /s/ Melanie A. Hill
                                            _____

8                                           MELANIE A. HILL
                                            Nevada Bar No. 8796

9                                           1925 Village Center Circle, Suite 150
                                            Las Vegas, Nevada 89134

10                                          Telephone: (702) 362-8500
                                            Facsimile:  (702) 362-8505

11                                          Melanie@MelanieHillLaw.com
                                            *Attorneys for Plaintiffs Ernesto Manuel Gonzalez,*

12                                          *James Gillespie, Cesar Vaquera Morales,*
                                            *Diego Chavez Garcia, and Bradley Campos*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Melanie Hill Law PLLC**
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

38 of 43

# VERIFICATION

I, ERNESTO MANUEL GONZALEZ, am an individual plaintiff in the above-captioned litigation and have read the foregoing Complaint for Damages and Demand for Jury Trial ("Complaint") and know the contents therein. The information provided in said Complaint is true and correct to the best of my knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

**Pursuant to NRS 53.045, I declare that the foregoing is true and correct under penalty of perjury of the laws of the State of Nevada.**

DATED: February _22___, 2022.



ERNESTO MANUEL GONZALEZ

Hill Law PLLC
ge Center Circle
Suite 150
s, Nevada 89134
) 362-8500

**VERIFICATION**

I, JAMES GILLESPIE, am an individual plaintiff in the above-captioned litigation and have read the foregoing Complaint for Damages and Demand for Jury Trial ("Complaint") and know the contents therein.   The information provided in said Complaint is true and correct to the best of my knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

**Pursuant to NRS 53.045, I declare that the foregoing is true and correct under penalty of perjury of the laws of the State of Nevada.**

DATED:  February _22_, 2022.

JAMES GILLESPIE

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

**VERIFICATION**

I, CESAR VAQUERA MORALES, am an individual plaintiff in the above-captioned litigation and have read the foregoing Complaint for Damages and Demand for Jury Trial ("Complaint") and know the contents therein.  The information provided in said Complaint is true and correct to the best of my knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

**Pursuant to NRS 53.045, I declare that the foregoing is true and correct under penalty of perjury of the laws of the State of Nevada.**

DATED:  February  22 , 2022.

_____
CESAR VAQUERA MORALES

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

1

## VERIFICATION

2         I, DIEGO CHAVEZ GARCIA, am an individual plaintiff in the above-captioned litigation and

3  have read the foregoing Complaint for Damages and Demand for Jury Trial ("Complaint") and know

4  the contents therein.  The information provided in said Complaint is true and correct to the best of my

5  knowledge, except as to those matters stated on information and belief, and as to those matters, I

6  believe them to be true.

7         **Pursuant to NRS 53.045, I declare that the foregoing is true and correct under penalty of**

8  **perjury of the laws of the State of Nevada.**

9         DATED: February __22__, 2022.

10

11                      DIEGO CHAVEZ GARCIA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFICATION**

I, BRADLEY CAMPOS, am an individual plaintiff in the above-captioned litigation and have read the foregoing Complaint for Damages and Demand for Jury Trial ("Complaint") and know the contents therein.  The information provided in said Complaint is true and correct to the best of my knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

**Pursuant to NRS 53.045, I declare that the foregoing is true and correct under penalty of perjury of the laws of the State of Nevada.**

DATED: February 22, 2022.

BRADLEY CAMPOS

Melanie Hill Law PLLC
1925 Village Center Circle
Suite 150
Las Vegas, Nevada 89134
(702) 362-8500